UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

CRIMINAL ACTION NO. 5:10-cr-73-KSF

UNITED STATES OF AMERICA                                  PLAINTIFF

V.                              **OPINION & ORDER**

ANTWAN BRYANT                                      DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the motion of Defendant, Antwan Lamont Bryant, for modification of his sentence pursuant to 18 U.S.C. § 3582(c)(2) and/or Rule 60(b)(6) of the Federal Rules of Civil Procedure [DE #92]. Defendant argues that his sentence should be reduced pursuant to the retroactive crack cocaine amendments to the United States Sentencing Guidelines ("Guidelines"), as well as pursuant to the Fair Sentencing Act of 2010 (the "FSA"). The United States has filed a response, objecting that, because Defendant committed the offenses for which he was sentenced before August 3, 2010, the effective date of the FSA, the provisions of the FSA reducing certain mandatory minimums do not apply to him. This matter is now ripe for review.

I.      BACKGROUND

On August 30, 2010, pursuant to a plea agreement with the United States, Defendant pled guilty to Conspiracy to Distribute of 50 Grams or More of Cocaine Base in violation of 21 U.S.C. §§ 846 and 841(a)(1)(Count One of the Indictment) and Distribution of Five or More Grams of Cocaine Base in violation of 21 U.S.C. § 841(a)(1)(Count Six of the Indictment). As alleged in the Indictment, the conduct to which Defendant pled guilty occurred between on or about January 1, 2009 (the exact date unknown), and continued through on or about June 1, 2010. Pursuant to 21 U.S.C. § 851, the United States filed notice regarding Defendant's prior felony drug convictions,

thereby subjecting him to a statutory mandatory sentence of life imprisonment as to Count One of the Indictment, pursuant to the enhanced penalties of 21 U.S.C. § 841(b)(1)(A), and a statutory mandatory minimum term of imprisonment of 10 years as to Count Six of the Indictment, pursuant to the enhanced penalties of 21 U.S.C. § 841(b)(1)(B).

Under the 2010 edition of the Guidelines, as amended in November 2010, Defendant's total offense level was 27. Given this total offense level and Defendant's criminal history category of II, the Guideline range for imprisonment was 78 to 97 months. However, because under 21 U.S.C. § 841(b)(1), Defendant was subject to a statutory minimum term of imprisonment of life as to Count One and 10 years as to Count Six, the effective Guideline range was life imprisonment. On January 14, 2011, Defendant was sentenced to 120 months imprisonment as to Count One and 120 months imprisonment as to Count Six, with all such terms to run concurrently, for a total of 120 months imprisonment.

Defendant subsequently filed the instant motion to correct his sentence. The bulk of Defendant's motion argues that the Court erred by failing to apply the November 2010 Amendments to the Guidelines in calculating his sentence. In addition, Defendant also makes passing reference to changes made to the crack cocaine quantities necessary to trigger the mandatory minimums contained in 21 U.S.C. § 841(b)(1) by the FSA, which became effective on August 3, 2010. Construed liberally, Defendant's motion argues that these changes should have applied to him when he was sentenced on January 14, 2011.

## II.     ANALYSIS

### A.     November 2010 Amendments to the Guidelines

To the extent that Defendant argues that his sentence should be modified because the Court erred by failing to apply the November 2010 Amendments made to the Guidelines concerning crack

2

cocaine quantities to his case, Defendant's motion fails. In calculating the recommended sentence under the Guidelines, the 2010 edition of the Guidelines was used, including the November 2010 Amendments. Thus, to the extent that the changes made by the Amendments to the Guidelines were applicable, Defendant received the benefits of these Amendments at his sentencing. In fact, Defendant's Guidelines range for imprisonment was 78 to 97 months, which is the length of sentence that Defendant now argues that he should have been given under the November 2010 Amendments.[1]

More critically, Defendant overlooks that, pursuant to 21 U.S.C. § 841(b)(1), he was subject to a statutory mandatory minimum sentence of life imprisonment on Count One and ten years imprisonment on Count Six. "Where a statutorily required minimum sentence is greater than the maximum of the applicable guidelines range, the statutorily required minimum sentence shall be the guideline sentence." U.S.S.G. § 5G1.1(b); *accord U.S. v. Johnson*, 564 F.3d 419, 423 (6th Cir.), *cert. denied*, — U.S. —, 130 S.Ct. 318 (2009); *United States v. Goff*, 6 F.3d 363, 366-67 (6th Cir. 1993). Accordingly, his effective Guideline range was life imprisonment, not 78 to 97 months. Thus, even if the November 2010 Amendments had not been applied in calculating his Guideline range of imprisonment (which they were), those Amendments would still require a sentence of life imprisonment because Defendant was subject to the mandatory minimum imposed by 21 U.S.C. § 841(b)(1)(A), which remained unchanged by the November 2010 Guideline Amendments.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute,...which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). "The authority to modify a sentence already commenced must be granted to the court by statute, and such modification is limited to the authority

---

[1] Had the amended Guidelines not been used, Defendant's total offense level would have been 29, with a guideline range for imprisonment of 97 to 121 months.

granted by the statute." *United States v. Addonizio*, 442 U.S. 178, 189 n. 16 (1979).

In this case, the relevant statute is 18 U.S.C. § 3582(c), which provides in part:

> The court may not modify a term of imprisonment once it has been imposed except that –
> ...
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o),...the court may reduce the term of imprisonment...if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The recently revised policy statement in U.S.S.G. § 1B1.10 provides in part:

> (2) Exclusions. – A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if –
> ...
> (B) an amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range.

U.S.S.G. § 1B1.10(a)(effective on March 3, 2008, by Amendment 712). Application note 1(A) to this Guideline states that a reduction under § 3582(c)(2) is not authorized where "an amendment... is applicable to the defendant but the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (e.g., a statutory mandatory minimum term of imprisonment)." U.S.S.G. § 1B1.10, comment, n. 1(A).

In *United States v. Johnson*, *supra*, the defendant similarly argued that his sentence should be reduced pursuant to 18 U.S.C. § 3582, despite his being subject to a mandatory-minimum term of 240 months. The court held that "Johnson's argument lacks merit because he was not in fact sentenced based on a Guideline range that was subsequently reduced. Rather, his sentence was based on the mandatory minimum...which remained unchanged by Guidelines Amendment 706." 564 F.3d at 423. Accordingly, Johnson was not eligible for a sentence reduction.

The same is true for Defendant. Any reduction in his sentence would conflict with the applicable policy statement and with the Congressionally mandated minimum sentence. Courts do not have discretion to reduce a mandatory minimum sentence. *United States v. Franklin*, 499 F.3d 578, 586 (6th Cir. 2007). Thus, having considered the record herein, the Court finds that the amendment to the crack cocaine Guideline does not lower Defendant's mandatory minimum sentence. Accordingly, he is not eligible for a sentence reduction on these grounds, and this Court has no authority to grant such a reduction.

      B.      <u>Applicability of Changes to Crack Cocaine Provisions of the FSA</u>

In addition, Defendant's motion could also be liberally construed to argue that the changes to the crack cocaine provisions made by the FSA should have applied in calculating his sentence. Indeed, the response filed by the United States focuses only on whether or not these provisions of the FSA should apply retroactively to Defendant. The FSA increased the drug quantities necessary to trigger mandatory minimum sentences under 21 U.S.C. § 841(b). Prior to August 3, 2010, the effective date of the FSA, the amount of cocaine necessary to bring the statutory mandatory minimum sentences into play was based on a 100:1 ratio of crack vs. powder cocaine. For crack cocaine, the FSA increased the amount required to trigger 21 U.S.C. § 841(b)(1)(A)'s mandatory life sentence from 50 to 280 grams. Thus, as Defendant pled guilty to conspiracy to distribute 218.17 grams, under the FSA, he would no longer be subject to a mandatory minimum sentence of life imprisonment as to Count One, his more significant charge. Rather, as to Count One, his mandatory minimum sentence would be ten years imprisonment under 21 U.S.C. § 841(b)(1)(B).

As an offender who was sentenced after the effective date of the FSA for conduct that occurred prior to the effective date, Defendant is a member of a group of offenders who have presented a difficult problem for federal courts. Specifically, courts have struggled as to whether the

FSA should be applied retroactively so that offenders, such as Defendant, who had not yet been sentenced as of August 3, 2010, should nevertheless receive the benefit of the Act.

The Sixth Circuit Court of Appeals has not directly addressed the applicability of the FSA to offenders such as Defendant. However, in *United States v. Carradine*, 621 F.3d 575 (6th Cir. 2010), the Sixth Circuit Court of Appeals addressed the issue of whether the FSA was retroactive with respect to defendants that had already been sentenced prior to the effective date of the Act, but whose appeal was pending on that date. Holding that it is not, the court explained:

> The "general savings statute," 1 U.S.C. § 109, requires us to apply the penalties in place at the time the crime was committed, unless the new enactment expressly provides for its own retroactive application. *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 660, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974); *United States v. Avila-Anguiano*, 609 F.3d 1046, 1050 (9th Cir.2010); *United States v. Smith*, 354 F.3d 171, 174 (2d Cir.2003); *Korshin v. Comm'r*, 91 F.3d 670, 673-74 (4th Cir.1996).
>
> The new law at issue here, the Fair Sentencing Act of 2010, contains no express statement that it is retroactive nor can we infer any such express intent from its plain language. Consequently, we must apply the penalty provision in place at the time Carradine committed the crime in question.

*Id*. at 580.

Applying *Carradine*, some district courts in the Sixth Circuit have found that the FSA is not retroactive with respect to defendants who had committed offenses but had not yet been sentenced prior to August 3, 2010. *See United States v. Young*, — F.Supp.2d —, 2011 WL 1042264 at *4-*6 (E.D.Mich. March 18, 2011)(thoroughly analyzing the language of the FSA and rejecting the rationale accepted by other district courts that the Act's grant of "emergency authority" to the United States Sentencing Commission to draw up new Guidelines to comply with the law "as soon as practicable and, in any event not later than 90 days" after August 3, 2010 is enough to demonstrate by "necessary implication" Congress's intent to make the FSA retroactive). *See also United States v. Watson*, 2010 WL 3272934 at *3 n.1 (E.D.Mich. Aug. 12, 2010)(unpublished)(declining to apply

the amended crack cocaine quantities of the FSA because the offense occurred prior to the Act's enactment date and the Act was not made retroactive). Other district courts in this Circuit have come to the opposite conclusion, relying on the Supreme Court's statement in *Great N. Ry. Co. v. United States*, 208 U.S. 452, 465 (1908) that the savings statute "cannot justify a disregard of the will of Congress as manifested either expressly or by necessary implication in a subsequent enactment." Despite the absence of an express retroactivity provision in the FSA, these courts have concluded that the context in which the Act was passed, its preamble, and its "emergency" mandate that the Guidelines be amended to achieve consistency with the Act, give rise to a necessary implication that Congress intended the Act to apply to all offenders sentenced after its enactment. *United States v. Robinson*, 763 F.Supp.2d 949, 955 (E.D.Tenn. 2011)(distinguishing *Carradine* because the defendant in *Robinson*, unlike the defendant in *Carradine*, was sentenced after enactment of the FSA). *See also United States v. Gillam*, 753 F.Supp.2d 683, 691 (W.D.Mich. 2010).

The *Robinson* and *Gillam* courts - as well as many other courts concluding that the FSA applies retroactively to defendants sentenced on or after August 3, 2010 - rely heavily on *United States v. Douglas*, 746 F.Supp.2d 220 (D.Me. 2010). In *Douglas*, after rejecting the argument that the savings statute *ipso facto* applies because the FSA does not contain an express retroactivity provision, the court set forth the evidence indicating that Congress intended the Act to apply retroactively to defendants sentenced after enactment of the Act:

> [T]here is no saving clause in the Fair Sentencing Act itself. To the contrary, in this statute Congress expressly granted the Commission emergency Guideline amendment authority, so that the Commission could adopt Guideline amendments effective almost immediately. And in addition, Congress expressly directed the Commission to adopt Guideline amendments "as soon as practicable, and in any event not later than 90 days", i.e., by November 1, 2010. What amendments? To be sure, the new enhancement provisions, but also any changes in the new crack penalty provisions. Where would the latter changes come from? From the new statutory minimum provisions. According to the statutory language, Congress instructed the

7

Commission "pursuant to the emergency authority provided under paragraph (1), [to] make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law." The Commission has followed Congress's instructions. Effective November 1, 2010, "the relationship between the statutory penalties for crack cocaine offenses and the statutory penalties for offenses involving other drugs is consistently and proportionally reflected throughout the Drug Quantity Table." But the new Guidelines cannot be "conforming" and "achieve consistency" (Congress's express mandate) if they are based upon statutory minimums that cannot be effective to a host of sentences over the next five years until the statute of limitations runs on pre-August 3, 2010 conduct.

What is more, for years the Sentencing Reform Act of 1984 has directed expressly that the governing Guidelines are those in effect on the day a defendant is sentenced. The Guideline commentary refers to this statutory provision as "Congress's directive to apply the sentencing guidelines in effect at the time of sentencing." Thus, during the past two decades of the Guidelines' existence, whenever the Commission has adopted Guideline amendments, those amendments have applied to all defendants sentenced thereafter, regardless of when the crime was committed. That is what will happen to the new Guidelines' alterations of the base offense levels for various quantities of crack: the new Guidelines will apply to all future sentencings after November 1, 2010, even if the criminal conduct occurred before the Fair Sentencing Act's effective date. Congress "expressly" required that outcome by ordering the emergency amendments within 90 days. Thus, many pre-August 3, 2010 offenders will benefit from the changed crack offense levels, at least if the mandatory minimums do not apply to them. Congress instructed the Commission to make such changes and make them immediately, under an existing statutory structure that makes them apply to those who have already offended but who have not yet been sentenced. It would be a strange definition of "conforming" and "consistency" to have these new amended Guidelines go into effect while the old and therefore inconsistent statutory minimums continue.

Finally, Congress stated that its goal was to "restore fairness to Federal cocaine sentencing." Understandably, Congress might not have wanted a large volume of previously sentenced offenders to be released from prison immediately. But what possible reason could there be to want judges to continue to impose new sentences that are not "fair" over the next five years while the statute of limitations runs? Unlike *Marrero*, the explicit congressional grant of emergency guideline amendment authority and the mandate of "consistency" and "conforming" amendments, coupled with the express language of the Sentencing Reform Act of 1984 (that the Guidelines in effect on the day of sentencing control irrespective of when offense conduct occurred), unmistakably demonstrate Congress's urgency and expectation of immediate change.

*Douglas*, 746 F.Supp.2d at 226-30 (internal citations omitted).

The Circuit Courts of Appeals that have directly addressed this issue are split. The First Circuit, in affirming the *Douglas* decision, held that the FSA applies to an offender who pled guilty prior to the Act's enactment but was not sentenced until after the enactment. *United States v. Douglas*, 644 F.3d 39 (1st Cir. 2011). The Third Circuit agreed, noting that "the Saving Statute cannot control when preserving repealed penalties would plainly conflict with the intent of Congress as expressed in a subsequent statute." *United States v. Dixon*, 648 F.3d 195, 199 (3rd Cir. 2011). The *Dixon* court explained that "'[t]he terms of the law as a whole,' namely the Act's grant of emergency authority to the Sentencing Commission and the desire to achieve 'consistency' through 'conforming' amendments, in conjunction with the directive in the Sentencing Reform Act of 1984 to apply the Guidelines in effect on the day of sentencing, lead to the inescapable conclusion that Congress intended to apply the FSA" to defendants sentenced on or after August 3, 2010, regardless of when the offense conduct occurred. *Id*. at 203 (internal citations omitted). In *United States v. Rojas*, 645 F.3d 1234, 1236 (11th Cir. 2011), the Eleventh Circuit also held that the FSA applies to defendants who committed crack cocaine offenses before August 3, 2010 but who are sentenced thereafter. The court explained that its conclusion was necessitated by "[t]he interest in honoring clear Congressional intent, as well as principles of fairness, uniformity, and administrability." *Id*. at 1236. However, the judges of the Eleventh Circuit have recently voted in favor of granting a rehearing of the case en banc and, accordingly, the panel's opinion in *Rojas* has been vacated. *United States v. Rojas*, — F.3d —, 2011 WL 4552364 (11th Cir. Oct. 4, 2011).

On the other hand, the Eighth Circuit has held that the FSA "is not retroactive, even as to defendants who were sentenced after the enactment of the FSA where their criminal conduct occurred before the enactment." *United States v. Sidney*, 648 F.3d 904, 910 (8th Cir. 2011). As the court observed, "[i]n the end, the fact remains that Congress could easily have included a single

9

sentence in the FSA to give it retroactive effect, but for whatever reason, it did not do so. It is beyond the province of this Court to do so now." *Id*. at 909. Likewise, the Fifth Circuit has held that "the penalties prescribed by the FSA do not apply to federal criminal sentencing for illegal conduct that preceded the FSA's enactment." *United States v. Tickles*, — F.3d —, 2011 WL 4953988 at *1 (5th Cir. Oct. 19, 2011). The Fifth Circuit noted that it was "influenced, if not bound, by our prior determination that the FSA was not retroactively applicable, despite its beneficent intentions, to conduct that occurred pre-enactment." *Id*. The court further explained that it found the failure of the FSA to contain an express statement repealing the prior sentencing structure retroactively to be decisive of the issue. *Id*.

Similarly, the Seventh Circuit has held that "[g]iven the absence of any direct statement or necessary implication to the contrary, we reaffirm our finding that the FSA does not apply retroactively, and further find that the relevant date for a determination of retroactivity is the date of the underlying criminal conduct, not the date of sentencing." *United States v. Fisher*, 635 F.3d 336, 340 (7th Cir. 2011). The court rejected the argument that there is a "necessary implication" that the FSA must be applied retroactively as to sentences imposed after August 3, 2010, regardless of when the criminal conduct took place, dismissing some of the same evidence of Congressional intent found persuasive by courts holding that the FSA should apply to all defendants sentenced after its enactment. *Id*. at 339. The court explained:

> Dorsey[2] points to the fact that the FSA expressly urged the Sentencing Commission to amend the guidelines on an emergency basis, and required the amendments to be adopted by November 1, 2010. He argues that this is evidence of the implicit will of Congress that the FSA be as speedily and widely implemented as possible. Further,

---

[2]*Fisher* was a consolidated appeal by two defendants, Anthony Fisher and Edward Dorsey, Sr. Fisher was sentenced prior to August 3, 2010, but had an appeal pending on that date. Dorsey pled guilty on June 3, 2010, prior to the enactment of the FSA, but was sentenced post-enactment on September 10, 2010. *Id*. at 338-339.

he points to statements of various legislators urging the adoption of the FSA as the means to correct the long-standing unfairness in crack cocaine sentences, and urging the application of the FSA to all defendants who had not been sentenced as of passage of the FSA, regardless of whether their criminal conduct occurred before this date.

In weighing this as potential evidence of a necessary implication that Congress wanted the FSA to be applied retroactively, we are mindful of the pitfalls of relying on legislative history. Although we may look for statements which can "plausibly be read as reflecting any general agreement," *Landgraf v. USI Film Products*, 511 U.S. 244, 262, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), cherry-picked statements made by proponents of the legislation cannot be relied upon as indications of the will of Congress.

Debate surrounding the crack cocaine sentencing scheme and the infamous "100:1 ratio" has been raging for years, and there is strong rhetoric to be found on either side. The FSA is compromise legislation and must be viewed as such. Given the long-standing debate surrounding, and high-level congressional awareness of, this issue, we hesitate to read in by implication anything not obvious in the text of the FSA. We believe that if Congress wanted the FSA or the guideline amendments to apply to not-yet-sentenced defendants convicted on pre-FSA conduct, it would have at least dropped a hint to that effect somewhere in the text of the FSA, perhaps in its charge to the Sentencing Commission. In other words, if Congress wanted retroactive application of the FSA, it would have said so.

*Id*. at 339-340.

Complicating matters, on July 15, 2011 (after the United States filed its response in this case), the Office of the Attorney General issued a "Memorandum for all Federal Prosecutors" directing United States Attorneys to argue that the FSA applies to all criminal prosecutions in which the sentence was imposed on or after August 3, 2010, the date of enactment, regardless of when the offense conduct took place. Prior to issuing this Memorandum, the Department of Justice had advised federal prosecutors that the new penalties of the FSA would apply prospectively only to offenders sentenced for conduct occurring on or after the enactment date. However, as explained in the Memorandum, the Attorney General now agrees "with those courts that have held that Congress intended the Act not only to 'restore fairness in federal cocaine sentencing policy' but to

11

do so as expeditiously as possible and to all defendants sentenced on or after the enactment date." Although the Attorney General recognized that this change of position "will cause some disruption and added burden as courts revisit some sentences imposed on or after August 3, 2010, and as prosecutors revise their practices to reflect this reading of the law," he concluded that the new position is "required by the law and our mandate to do justice in every case."

However, the Seventh Circuit has recently considered this change of position by the Attorney General and declined to rehear a consolidated appeal en banc in order to overrule *Fisher*. *United States v. Holcomb*, — F.3d —, 2011 WL 3795170 (7th Cir. Aug. 24, 2011). In a written opinion explaining his vote against rehearing the case en banc, Chief Judge Frank H. Easterbrook notes that the Attorney General's Memorandum essentially concludes that the FSA is "partially" retroactive, in that it directs the United States Attorneys to argue that the Act applies to criminal prosecutions in which the sentence was imposed on August 3, 2010 (the day the President signed the bill), but not to those cases in which the sentence was pronounced on August 2, 2010, or earlier, even if they were pending in the district court or appeal on August 3. Judge Easterbrook writes that "[a]s far as I am aware, the Supreme Court has never held any change in a criminal penalty to be partially retroactive. The choice always has been binary: retroactive or prospective." *Id*. at *1. Judge Easterbrook further criticizes the argument for "partial" retroactivity, explaining

> The panel in *Fisher* rejected the argument that the date of sentencing matters. If the 2010 Act is retroactive, then it applies to all pending cases no matter how far they have got in the judicial system; if it is not retroactive, then it applies only to crimes committed on or after August 3, 2010. Nothing depends on the sentencing date, which reflects how long it took to catch a criminal, and the state of the district judge's calendar, rather than principles of deterrence or desert. Section 109 says that the former law "shall be treated as still remaining in force" for pre-amendment conduct. If the old law is "treated as still remaining in force", the new law can't be applied to persons newly sentenced for pre-amendment crimes; §109 forecloses partial retroactivity.

*Id*. at *2.

Judge Easterbrook also criticizes the lack of analysis in the Attorney General's Memorandum that could justify the rationale for the change in position by the Department of Justice. Specifically, Judge Easterbrook explains:

> When the Executive Branch confesses error, this circuit gives respectful consideration to the rationale for the new position. A recent example is *United States v. Corner*, 598 F.3d 411 (7th Cir .2010)(en banc), which overruled several of the circuit's decisions after the Solicitor General filed a brief carefully explaining where the circuit had gone wrong. That explanation carried the day; *Corner* was unanimous. Unfortunately, the Attorney General's "Memorandum for all Federal Prosecutors" lacks the sort of analysis that was so helpful in *Corner*. The Memorandum does not discuss § 109 or the language of the 2010 Act. It does not explain why partial retroactivity is appropriate—or why the transition should depend on the date of sentencing rather than some other event, such as a guilty plea or appeal. The Attorney General does quote from the caption of S. 1789, which describes the proposal as "A bill to restore fairness to Federal criminal sentencing", but this language precedes the enacting clause and is not part of the United States Code. It also is unhelpful in evaluating a proposal for retroactive application. Every law lowering sentences expresses a legislative conclusion that sentences had been excessive. The common law responded by applying penalty reductions retroactively. But § 109 provides otherwise. The observation that Congress, the President, and many federal judges think the former rules excessively severe does not distinguish the 2010 Act from any other law reducing sentences and does not justify disregarding the anti-retroactivity norm created by § 109.

*Id*. at *3.

Judge Easterbrook's opinion emphasizes the importance of strictly construing laws as they are written, in recognition of the fact that legislating involves compromise. Although also recognizing that some view the seemingly arbitrariness of distinguishing between defendants whose conduct occurred before or after August 3, 2010 as being unfair, Judge Easterbrook theorizes that it would also be unfair for the judiciary to give supporters of retroactivity more than they were able to secure during the legislative process. Specifically, Judge Easterbrook explains:

> When Congress enacts a bill, a majority agrees on its text, not on grand principles. Neither side got everything it wanted in this statute, and judges disserve the

13

legislative process by giving one side more than it secured at the bargaining table. Indeed, the tendency to provide one side with "just a little more in the right direction" can make legislation harder to accomplish by requiring Congress to take up, and resolve, all of the ways in which the judiciary might be tempted to tinker. "[N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987) (emphasis in original). For all we can know, a belief in Congress that the judiciary would make the law partially retroactive would have stiffened the opposition to the bill, and the 100:1 ratio would still be in force today.

Choosing an effective date for new legislation can be as arbitrary as deciding how many grams of cocaine hydrochloride receive the same treatment as one gram of cocaine base. The Attorney General relies heavily on the word "fair" in the title of the Fair Sentencing Act, but what's fair about condemning someone sentenced on August 2 to more time in prison than a person sentenced the next day, even though they committed their crimes on the same date (and may have been co-conspirators)? Suppose comrades in crime distribute cocaine in mid–2009 and are caught promptly. One confesses, pleads guilty, and testifies at the trial of the other, who fights tooth and nail and falsely denies culpability. The first is sentenced on August 1, 2010, the second on September 1. How would it be "fair" (or even conscionable) to give the lower sentence to the person who refused to accept responsibility for his crimes, just because by dragging out the process that person was sentenced after August 2?

It would be weird to conclude that, the longer it takes to issue an indictment, or the better the offender at evading capture, and hence the later the sentencing date, the lower the sentence. Why should the changes in the minimum and maximum terms take effect before the changes in the Guidelines (November 1, 2010)? *Rojas*, *Dixo*n, and the Attorney General do not even try to explain why they chose August 3 rather than November 1 as the transition date. Why change the rules as of the date of sentencing rather than the date of arraignment, plea, or trial, the date the appeal is decided, or some other event? Any of those transition dates would produce incongruities. Only full retroactivity, or no retroactivity, treats equal criminal conduct equally.

If the President wants to apply the lower minimum and maximum penalties to all cases, pending and closed, he has only to issue a general commutation. The pardon power permits the President to achieve retroactive lenience if he is willing to pay the political price. By contrast, the judiciary must implement compromises faithfully, even when most judges wish that the political decision had been different. I have therefore voted not to hear these appeals en banc.

*Id*. at *7.

Considering all of the above, this Court concludes that the FSA is not "partially retroactive," and, therefore, its amendments to the mandatory minimums do not apply to Defendant, notwithstanding the fact that he was sentenced after the enactment of the FSA. Applying *Carradine*, although that case involved a defendant sentenced prior to the FSA's enactment, the Court cannot ignore that the Sixth Circuit specifically found that the FSA "contains no express statement that it is retroactive *nor can we infer any such express intent from its plain language*." *Carradine*, 621 F.3d at 580 (emphasis added). Like the court in *Young*, this Court finds that it is bound by the Sixth Circuit's determination that the will of Congress to make the FSA retroactive was not manifested, either expressly or by necessary implication. Moreover, the Court agrees with Judge Easterbrook's analysis that, tempting as it may be to read an intention of "partial retroactivity" into the statute, to do so would be a disservice to the legislative process. As further explained by Judge Robert H. Cleland's in *Young*:

> That Congress chose not to retroactively apply the FSA is not remarkable nor is it necessarily attributable to inadvertence of Congress. It appears more likely to this court that Congress knew of the issue and chose not, or could not agree, to make the FSA retroactive than that Congress overlooked in its final form the issue of retroactivity.
>
> Further, even if the court disagreed with Congress's policy choice, such disagreement does not provide the framework for the court to find that by "necessary implication" the FSA must provide for retroactivity. "Necessary implication" does not mean, for example, the most logical, the most efficacious, or the most favored interpretation. Rather, the court agrees with reasoning expressed by Judge Gibson in *United States v. Dickey*,
>
>> [C]onjectures are of no moment. Simply stated, Congress did not provide for retroactivity. Judge Hornby recognized that the "statute itself contains no provision stating in so many words either that it applies to all sentencings going forward, or that it applies only to criminal conduct that occurs after its effective date." [*Douglas*, 746 F.Supp.2d at 224, 2010 WL 4260221 at *3.] This Court will not seize upon and inflate the importance of isolated words and phrases

such as "conforming" and "achieve consistency" in order to read between the lines when Congress chose to omit any reference to retroactivity. Statutes are fixed through the democratic process, not through judicial review. It is not the role of the courts to give effect to what certain members thought Congress *should* have done. Nor is it the role of the courts to give effect to what we judges *think* Congress should have done. The courts only give effect to what Congress *actually did*.

759 F.Supp.2d 654, 665, 2011 WL 49585, at *11 (W.D.Pa. Jan. 4, 2011)(emphasis in original).

*Young*, 2011 WL 1042264 at *6-*7.

Thus, because the FSA's changes to the mandatory minimums do not apply to Defendant, he is not eligible for a sentence reduction due to the enactment of the FSA.

## III. CONCLUSION

For all of the foregoing reasons, the Court finds that Defendant is not eligible for a sentence reduction. Accordingly, **IT IS ORDERED** that the motion of Antwan Lamont Bryant for a modification of his sentence pursuant to 18 U.S.C. § 3582(c)(2) and/or Rule 60(b)(6) of the Federal Rules of Civil Procedure [DE #90] is **DENIED**.

Dated this November 2, 2011.



**Signed By:**
*Karl S. Forester*
**United States Senior Judge**